UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HENRY OLIVER SPINKS,

    Plaintiff,

    v.

CALIFORNIA DEPARTMENT OF TRANSPORTATION, et al.,

    Defendants.

Case No. 3:22-cv-05067-WHO

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 20

Pro se plaintiff Henry Oliver Spinks, a former resident of a homeless encampment in Oakland, California, sued the California Department of Transportation ("Caltrans") for various alleged injuries arising from the closure of that encampment. For the reasons that follow, Spinks' amended complaint is dismissed with leave to amend particular claims.

Additionally, as described further below and based on Spinks' failure to appear at the hearing for this motion, **Spinks is ORDERED TO SHOW CAUSE why this case should not be dismissed for failure to prosecute. Spinks may expunge this Order to Show Cause by filing an amended complaint by March 24, 2023, addressing the issues analyzed below.**

## BACKGROUND

### I.  Procedural Background

This case was filed by pro se plaintiff Henry Oliver Spinks, who at the time of filing resided at a homeless encampment on Wood Street in Oakland, California (the "Wood Street Encampment"). Complaint ("Compl.") [Dkt. No. 1]. His complaint is factually related to another case previously before me, *Blain v. California Department of Transportation*, 3:22-cv-04178-WHO (N.D. Cal. Feb. 8, 2023) ("*Blain*").

In September 2022, I denied Spinks' request for a temporary restraining order ("TRO"), in

which he sought to restrain Caltrans from allegedly violating the TRO I had previously granted and then dissolved in *Blain*. [Dkt. No. 6]. I wrote that Spinks' only justification for the TRO was to ensure that Caltrans would not destroy his vehicles located at the encampment, but Spinks had not shown any likelihood of imminent legal violation. *Id.*

Caltrans filed its first motion to dismiss on November 23, 2022, Dkt. No. 10, to which Spinks did not respond. I issued an Order to Show Cause ("OSC") as to why the case should not be dismissed for failure to prosecute, Dkt. No. 16, and in response Spinks filed a First Amended Complaint ("FAC"), Dkt. No. 17. The FAC vacated the OSC and mooted the motion to dismiss. [Dkt. No. 18].

Caltrans filed a renewed motion to dismiss on January 25, 2022. ("Mot.") [Dkt. No. 20]. Attached to the motion was a declaration by Caltrans engineer Maxime Dabilly. ("Dabilly Decl.") [Dkt. No. 20] Ex. 1. Spinks filed a response, which I will construe as an opposition to the motion. ("Oppo.") [Dkt. No. 21]. Caltrans replied. ("Repl.") [Dkt. No. 22]. I held a hearing at which counsel for Caltrans appeared, but Spinks failed to appear.

## II. Factual Background

As outlined in the FAC, Spinks alleges that Caltrans and certain Caltrans officials—including Cheryl Chambers, Dina El-Tawansy, Tony Tavares, and Toks Omishakin—along with Governor Gavin Newsom, an individual named Derek Smith who is allegedly the Chief Executive Officer of Marinship Development Interest LLC, and perhaps the Oakland Fire Department ("OFD") and Oakland Police Department ("OPD") violated various provisions of the Constitution.[1] *See* FAC at 2-6. The claims against the individuals are brought against them in

---

[1] Only Caltrans was served in this proceeding. [Dkt. No. 14]. It seems that those defendants were served with the initial complaint, and that the FAC added Governor Newsom and Smith as new defendants.

Governor Newsom is immune from liability for all claims in this suit. Even if he were properly served, any claims against him would be DISMISSED with prejudice. *See, e.g.*, *Blain*, 3:22-cv-04178-WHO, Dkt. No. 148 (Order Granting Motions to Dismiss).

It is unclear who Smith is or what role the "Marinship Development Interest LLC" played in this complaint. Even if he were properly served, all allegations against Smith would be DISMISSED without prejudice for failure to state a claim because Spinks did not include any factual allegations specific to Smith.

2

their official and personal capacities. *Id.* at 15. The factual allegations broadly fall into two categories: those related to the investigations into the fires at the Wood Street Encampment and those related to the closure, clean-up, and removal of items from the Wood Street Encampment.

With respect to the fire investigations, Spinks seems to say that he and other Wood Street residents were unfairly accused of starting fires at the encampment, the danger from which played a role in the ultimate closure of the encampment. *See Blain*, 3:22-cv-04178-WHO, Dkt. No. 148 (N.D. Cal. Nov. 3, 2022, Order Granting Motions to Dismiss),[2] 9:7-12; 14:5-8; 22:5-7; 28:8-10 (discussing the demonstrated danger from the many fires that occurred at the Wood Street Encampment, in a separate proceeding). Spinks states that he did not cause any fires, FAC at 4, 5; that it was unfair to "lump[]" all residents of Wood Street together in assessing blame for the fires, *id.* at 1, 5, 7; that OFD and OPD failed to properly investigate the fires, *id.* at 5-6; and that Caltrans may be responsible for some of the fires, *id.* at 8-9.

With respect to the closure of the encampment, Spinks says that he lost community, *id.* at 10-12; that his possessions were damaged or destroyed, including vehicles and tools, *id.* at 9, 11, 15; that he lost access to the land, which he refers to as "public land," *id.* at 12, 14, 16; that he was prevented from freely assembling at the encampment; *id.* at 13; and that he cannot move to a homeless shelter without giving up freedom, friends, family, and pets, *id.* at 14. Spinks specifically alleges that two of his vehicles were damaged and rendered unusable when they were in Caltrans' storage, *id.* at 11, and that he lost 60 percent of the tools he needs for work, *id.* at 11. He also outlines specific losses with accompanying dollar amounts for his shelter buildings, tools, clothing, and vehicles, totaling $59,600. *Id.* at 16-17. He "charge[s] Caltrans" $9.1 million for various violations of his Constitutional rights and for trauma, emotional distress, loss of community, loss of access to land for its soil to harvest, decreased life expectancy, increased exposure to violence and theft, loss of income, and loss of other freedoms. *Id.* at 17-18.

It appears that Spinks asserts five causes of action in total: (1) violation of the Fifth

---

[2] Because courts may take judicial notice of public records like court proceedings, I take judicial notice of the proceedings in *Blain*. *See Astre v. McQuaid*, No. 3:18-CV-00138-WHO, 2018 WL 2215832, at *3 n.3 (N.D. Cal. May 15, 2018); *see also Lemoon v. Cal. Forensic Med. Grp., Inc.*, 575 F. Supp. 3d 1212, 1230 (N.D. Cal. 2021).

3

1  Amendment right to Due Process, *id.* at 2-7, 12, 14; (2) violation of the Fourth Amendment right
2  against unlawful seizure, *id.* at 4, 9-11; (3) violation of the Eighth Amendment right against cruel
3  and unusual punishment, *id.* at 4; (4) violation of the First Amendment for interfering with
4  community and free assembly, *id.* at 11, 13; and (5) conspiracy, *id.* at 2-3. Spinks seeks money
5  damages and equitable relief in the form of "restor[ing] to me the public land underneath my
6  compound at Wood Street." *Id.* at 16-18.

## LEGAL STANDARD

8   A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) is a
9  challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. Proc. 12(b)(1). "Federal
10 courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited
11 jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party
12 invoking the jurisdiction of the federal court bears the burden of establishing that the court has the
13 requisite subject matter jurisdiction to grant the relief requested. *Id.*

14  A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d
15 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the
16 allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).
17 The challenger asserts that the allegations in the complaint are insufficient "on their face" to
18 invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th
19 Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are
20 true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392
21 F.3d at 362.

22  "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by
23 themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve
24 this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*
25 (citation omitted). Instead, the court "may review evidence beyond the complaint without
26 converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted).
27 Once the moving party has made a factual challenge by offering affidavits or other evidence to
28 dispute the allegations in the complaint, the party opposing the motion must "present affidavits or

any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard is not akin to a probability requirement, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully

pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted)). However, pro se pleadings must still allege facts sufficient to allow a reviewing court to determine whether a claim has been stated. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citation omitted).

## DISCUSSION

### I.  Claims Against Caltrans as an Agency

Construing the FAC liberally, *see Erickson*, 551 U.S. at 94, Spinks asserts each cause of action against Caltrans as a state agency. But Caltrans is immune from suit in these circumstances under the Eleventh Amendment because "[s]tate immunity extends to state agencies and to state officers, who act on behalf of the state and can therefore assert the state's sovereign immunity." *Nat'l Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996) (first citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-46 (1993); and then citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)); *see also id.* ("[Caltrans] is a California state agency which is entitled to immunity from suit." (citing *P.R. Aqueduct*, 506 U.S. at 142-46)).

There are three exceptions to Eleventh Amendment immunity: (1) "a state may waive its Eleventh Amendment defense"; (2) "Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority"; and (3) "under *Ex parte Young* doctrine, the Eleventh Amendment does not bar 'a suit against a state official when that suit seeks . . . prospective injunctive relief.'" *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817-18 (9th Cir. 2001) (citations omitted). But there are no allegations in the complaint, and Caltrans does not concede, that Caltrans waived its Eleventh Amendment immunity or that the underlying Constitutional clauses somehow abrogated Caltrans' immunity. *See id.* And Caltrans as a state agency is different from Caltrans officials, who may not claim Eleventh Amendment immunity in certain instances. All claims against Caltrans as an agency are DISMISSED with prejudice

because there are no facts that Spinks could plead to avoid the immunity bar.

## II.     Claims Against Caltrans Officials

Again construing the FAC liberally, *see Erickson*, 551 U.S. at 94, Spinks asserts all causes of action against the named Caltrans officials, Chambers, El-Tawansy, Tavares, and Omishakin.[3] *See* FAC at 3. Assuming that the Caltrans officials were properly served, *see* Mot. 4:20-5:2, Spinks' claims against them fail.

### A. Claims Against Officials in Their Official Capacity

Spinks cannot bring claims for money damages against the officials in their official capacity because the Eleventh Amendment "shields state officials from official capacity suits" except for those seeking prospective declaratory or injunctive relief. *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (citation omitted); *Ex parte Young*, 209 U.S. 123, 160 (1908). The claims for money damages against the Caltrans officials in their official capacities are barred by the Eleventh Amendment and are DISMISSED with prejudice because there are no facts that Spinks could plead to avoid the immunity bar.

The only claim for equitable relief in the FAC—asking to "restore to me the public land underneath my compound at Wood Street," FAC at 16—is also barred by the Eleventh Amendment because Spinks fails to plead "factual allegations from which [I] could plausibly conclude" that the state officials had a "fairly direct connection with the enforcement" of the provision at issue. *Bolbol v. Brown*, 120 F. Supp. 3d 1010, 1018 (N.D. Cal. 2015); *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992); *Almond Hill Sch. v. U.S. Dep't of Ag.,* 768 F.2d 1030, 1034 (9th Cir. 1985). There are no allegations specific to the state officials except that Chambers "made the fraudulent public declaration" that "impl[ied]" residents of Wood Street caused 240 fires at the encampment. FAC at 3. This allegation is related to the allegations about the failure to investigate the fires and the unfairness in assigning blame to the entire community, but not related to the claims about the closure of the encampment and therefore untethered to the

---

[3] Caltrans notes that Omishakin is not a Caltrans official and so had no role in the allegations in this complaint. *See* Mot. n.1. Spinks does not contest this. All causes of action asserted against Omishakin are DISMISSED without leave to amend. *See also Blain*, Dkt. No. 148 at n.3.

7

claim for equitable relief. Accordingly, the allegations about Chambers are not sufficiently direct to connect her to the closure. *See Bolbol*, 120 F. Supp. at 1018. All claims for equitable relief against the Caltrans officials are DISMISSED. This dismissal is with prejudice because amendment would be futile; Spinks can plead no facts showing that he has a legal right to be given Caltrans' land. *See Cato*, 70 F.3d at 1106 (noting leave to amend need not be granted to pro se litigants where "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment").

### B. Claims Against Officials in Their Individual Capacities

Spinks fails to state a claim against any of the officials in their individual capacities because the FAC does not include any sufficient allegations specific to the individuals.[4] Though "a plaintiff may sue a state officer in his individual capacity for alleged wrongs committed by the officer in his official capacity" and may recover retroactive damages, Spinks must still plead facts plausibly connecting each individual to the alleged violations and damages, but he does not do so here. *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990), *as amended*.

#### 1. Fifth Amendment

Spinks' Fifth Amendment allegations seem to span two concerns: that he was unfairly blamed for causing fires at the Wood Street Encampment and that he was forced to give up certain liberties by leaving the encampment and moving to a homeless shelter. *See* FAC at 2-7, 12, 14. His only specific allegation against any Caltrans official is that Chambers "made the fraudulent public declaration . . . implying that I and the members of my community are guilty of causing all 240 fires at Wood Street." *Id.* at 3. Even if I accept this as true, it is not clear what injury Spinks believes he suffered because of this statement, and it is not clear how Chambers' belief that Spinks contributed to the fires might violate the Fifth Amendment. Accordingly, Spinks has not stated a claim for violation of the Fifth Amendment based on the statements about causing fires.

Additionally, Spinks does not state a claim for violation of his due process rights based on having to leave the Wood Street Encampment and being given the option of moving into a shelter.

---

[4] Caltrans argues that none of the claims are asserted against the officials in their individual capacities, Mot. 6:26-9:4, but the FAC expressly states otherwise, FAC at 3, 15.

8

1    Spinks does not have a legal right to be on Caltrans-owned land. Though there are examples of
2    Caltrans and other government entities being temporarily restrained from removing unhoused
3    individuals living on their properties, those cases are distinct because the alleged Fifth
4    Amendment violations asserted claims of state-created danger, which were found imminent due to
5    concerns about lack of notice, severe weather, and lack of available shelter. *See, e.g.*, *Janosko v.
6    City of Oakland*, No. 3:23-CV-00035-WHO, 2023 WL 187499 (N.D. Cal. Jan. 13, 2023), *order
7    dissolved*, Dkt. No. 32, (N.D. Cal. Feb. 27, 2023); *Blain v. Cal. Dept. of Trans.*, No. 3:22-CV-
8    04178-WHO, 2022 WL 2919646 (N.D. Cal. July 22, 2002), *order dissolved*, 2022 WL 3702106
9    (N.D. Cal. Aug. 26, 2022). Spinks does not bring a state-created danger claim, nor could he here:
10   the Caltrans-owned section of the Wood Street Encampment is closed, so the claim would be
11   moot, and at any rate he was provided months of notice of the closure, there were available shelter
12   beds at the time, and there are no allegations of severe weather. *See also Blain*, Dkt. No. 148.
13       Because Spinks fails to state a claim against the Caltrans officials under the Fifth
14   Amendment, the claim is DISMISSED. To the extent that he can clarify how his Fifth
15   Amendment rights were violated and the specific actions each official took that led to those
16   violations, Spinks has leave to amend this claim.

17       **2. Fourth Amendment**

18       The Fourth Amendment protects individuals experiencing homelessness from "some
19   meaningful interference" with their "possessory interest in the[ir] property." *Lavan v. City of Los
20   Angeles*, 693 F.3d 1022, 1028 (9th Cir. 2012) (citation omitted). In *Lavan*, the Ninth Circuit
21   determined that "by seizing and destroying [individuals'] unabandoned legal papers, shelters, and
22   personal effects, the City meaningfully interfered with [those individuals'] possessory interests in
23   that property." *Id.* at 1030. The court noted that even if the unhoused plaintiffs had violated a city
24   ordinance prohibiting leaving personal property in public spaces, "the seizure and destruction of
25   [their] property remains subject to the Fourth Amendment's reasonableness requirement." *Id.* at
26   1029.
27       Spinks pleads specific facts concerning the alleged seizure and destruction of his property,
28   including the monetary value of their losses, which could theoretically state a claim for violation

9

of the Fourth Amendment under *Lavan*. *See* FAC at 4, 9-11, 16-18. But, while he pleads that Chambers was the "manager" of the eviction process, *id.* at 3, he pleads no facts connecting any of the Caltrans officials to the destruction or the closure more generally. Accordingly, without more, these claims are DISMISSED with leave to amend to assert specific facts against the Caltrans officials.[5] If Spinks files an amended complaint, he should say exactly what actions each official took that he thinks violated his Fourth Amendment rights and what his damages are.

### 3. Eighth Amendment

The Eighth Amendment's Cruel and Unusual Punishments Clause "circumscribes the criminal process." *Martin v. City of Boise*, 920 F.3d 584, 615 (9th Cir. 2019) (quoting *Ingraham v. Wright*, 430 U.S. 651, 667 (1977)). There must be something in the complaint that connects the allegations to the criminal process to state a claim. Unlike in *Martin*, which involved a "sweeping" local ordinance that criminalized homelessness, here there are no allegations connecting the facts of the complaint to the criminal process. *Id.* at 616-17. And, even if there were such an ordinance here, neither Caltrans nor its officials have authority to enforce criminal statutes. Therefore, this cause of action is DISMISSED with prejudice because amendment would be futile.

### 4. First Amendment

"The First Amendment, incorporated against the states by the Fourteenth Amendment, prohibits states from enacting laws "abridging the freedom of speech, . . . or the right of the people peaceably to assemble." *Tandon v. Newsom*, 517 F. Supp. 3d 922, 961 (N.D. Cal. 2021) (subsequent history and internal quotation marks omitted) (quoting *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1020-21 (9th Cir. 2009)); *see also* U.S. Const. Amend. I. Free assembly claims are evaluated under the same analysis as free speech claims.

---

[5] Caltrans asserts that the allegations are unsubstantiated so the claim should be dismissed, apparently without leave. *See* Mot. 12:25-13:14. But the allegations in the FAC are concerning and it seems that Spinks *could* state a claim for relief, so Spinks has leave to amend to clarify how any of Caltrans' officials' actions failed to comply with the *Sanchez* settlement and the Fourth Amendment more generally.

*Tandon*, 517 F. Supp. 3d at 959 (citations omitted).  And, in a nonpublic forum,[6] the government may restrict First Amendment rights so long as the restrictions are "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's views."  *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1134 (9th Cir. 2011) (citation omitted).

Spinks fails to state a claim because he does not plead that he was forced to leave the encampment or that he lost his community "merely" because Caltrans or its officials opposed his views.  *See id.*  Additionally, Spinks concedes in the FAC—which Caltrans has repeatedly noted—that one of the motivating reasons for closing the encampment was the risk of danger from the hundreds of fires.  Spinks therefore cannot show that the closure or its impact on his First Amendment rights were "merely" an effort to oppose his views, given the undisputed role that the fire danger played in the decision; it would be futile for him to amend his pleadings to say otherwise.  This claim is DISMISSED with prejudice.

### 5. Conspiracy

Finally, Spinks seems to assert that the Caltrans officials conspired with Caltrans, Governor Newsom, OFD, and OPD to deprive him of certain rights.  *See* FAC at 2-3.  It is not clear what rights he says were subject to the conspiracy, who was involved or how, or what statute he thinks was violated.  This claim is DISMISSED with leave to amend.  If Spinks chooses to amend the claim, he must clearly state the actions taken by Caltrans officials and he must try to clarify what statute he thinks was violated.

## CONCLUSION

Caltrans' motion is granted and Spinks' claims are DISMISSED.  He has leave to amend the Fifth Amendment, Fourth Amendment, and conspiracy claims against the officials in their individual capacity, if he can do so.  <u>If Spinks chooses to amend his complaint, he must ensure that he signs the document he submits to this court.</u>

Further, Spinks is ORDERED TO SHOW CAUSE why judgment should not be entered in

---

[6] Public property that has not been traditionally available for public expression and which is not designated by the government as a public forum is considered a nonpublic forum under the First Amendment.  *PMG Intern. Div. LLC v. Rumsfeld*, 303 F.3d 1163, 1169-70 (9th Cir. 2002).

light of this order and/or why the case should not be dismissed for failure to prosecute. Spinks may expunge this Order to Show Cause by filing his (signed) amended complaint **by March 24, 2023**. If he fails to do so, **this action will be DISMISSED with prejudice to failure to prosecute**. Fed. R. Civ. Proc. 41(b).

**IT IS SO ORDERED.**

Dated: March 2, 2023

William H. Orrick
United States District Judge